UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| FLANDREAU SANTEE SIOUX TRIBE, a federally recognized Indian tribe, | **4:20-CV-4142** |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| vs. | **DENYING MOTION FOR RECONSIDERATION AND MOTION TO AMEND** |
| UNITED STATES OF AMERICA; ALEX M. AZAR II, in his official capacity as Secretary of the United States Department of Health and Human Service; RADM MICHAEL D. WEAHKEE, in his official capacity as Director of the Indian Health Service; and DAVID BERNHART in his official capacity as Secretary of the United States Department of Interior, | |
| Defendants. | |

On September 30, 2021, on motion by Defendants, this Court dismissed Counts II and III of Plaintiff Flandreau Santee Sioux Tribe's ("the Tribe") complaint in full and dismissed Count VI in part. Pending before the Court is the Tribe's Motion for Reconsideration pursuant to Rule 59(b) of the Federal Rules of Civil Procedure, and in the alternative, Motion to Amend pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. For the following reasons, the Tribe's motion is denied.

## BACKGROUND

I. **Motion to dismiss and Court's September 30, 2021 Memorandum Opinion and Order granting in part and denying in party Plaintiff's motion to dismiss**

In its complaint, the Tribe alleges that Defendants failed to pay the full amount of contract support costs due to it in violation of their obligations under the Tribe's Indian Self Determination Education and Assistance Act ("IDEAA") contracts for fiscal years 2011 through 2013 and in violation of the ISDEAA. Defendants moved to dismiss Counts II, III and VI of the Tribe's complaint. Counts II and III involve claims for breach of contract. In Count II, the Tribe alleged IHS "failed to calculate and pay the administrative costs of operating the third-party revenue-

1

funded portion of the IHS contracts" by "fail[ing] to include third-party revenues in the IHS direct program base against which the Tribe's indirect cost rate was applied[.]" (Doc. 1, ¶¶ 61-62). In Count III, the Tribe sought damages in the form of lost third-party services and revenues. (Doc. 1, ¶ 65). The Tribe alleged that IHS's failure to pay the Tribe's administrative costs associated with operating the third-party revenue-funded portion of the IHS contracts caused the Tribe to divert program dollars to cover fixed administrative and overhead costs. (Doc. 1, ¶ 36). It was alleged that absent IHS's failure to pay the full amount of indirect contract support costs, these program dollars would have been available for additional program services from which the Tribe could have received additional third-party revenue. (Doc. 1, ¶ 36). In Count VI, the Tribe alleged that IHS's failure to pay the Tribe the full contract support costs was also in breach of its statutory duties under 25 U.S.C. § 5325(a)(2)-(3).

On September 30, 2021, the Court issued its Memorandum Opinion and Order granting Plaintiff's Motion to Dismiss Counts II and III as well as the Tribe's Count VI statutory violation claims for lost third-party revenues and for unpaid contract support costs on the third-party revenue-funded portion of the Tribe's operations. (Doc. 36). The Court concluded that the Tribe had failed to present such claims to the contracting officer for a final decision—a prerequisite to the Court's jurisdiction over such claims.

The Court stated in its decision that "[b]ecause a contracting officer's final decision is a prerequisite to the court's jurisdiction [under the Contract Disputes Act ("CDA")] the court may not consider 'new' claims a contractor failed to present to the contracting officer. (Doc. 36 at 393) (citing *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015)). The purpose of the CDA presentation requirement is to provide the contracting officer with "adequate notice of the basis and amount of [the] claim." (Doc. 36 at 406) (citing *Williams v. United States*, 118 Fed.Cl. 533, 539 (2014)). "[M]erely adding factual details or legal argumentation does not create a different claim, but presenting a materially different factual or legal theory. . . does create a different claim." (Doc. 36 at 393) (citing *K-Con Bldg. Sys., Inc.*, 778 F.3d at 1006).

The Court noted that "[i]n determining whether the assertion constitutes a new claim, the critical test is whether the contracting officer's right to adjudicate the claim is undermined by circumventing his statutory role 'to receive and pass judgment on the contractor's entire claim.'" (Doc. 36 at 393) (citing *Cerberonics, Inc. v. United States*, 13 Cl.Ct. 415, 418 (1987)). This

approach, "serves the objective of giving the contracting officer an ample pre-suit opportunity to rule on a request, knowing at least the relief sought and what substantive issues are raised by the request." (Doc. 36 at 394) (citing *K-Cong Bldg. Sys., Inc.*, 778 F.3d at 1006).

In opposition to the Motion to Dismiss, the Tribe argued that the factual and legal basis of its third-party revenue-based claims were presented to the contracting officer because they arose out of the Tribe's claim that IHS failed to pay the Tribe less than the full amount of contract support costs due to it under its ISDEAA contracts. (Doc. 24 at 260). After examining the relevant caselaw, the Court concluded that in order for a claim not to be considered a new claim, the factual and legal basis of the third-party revenue-based claims and the amount of relief sought for such claims must have been presented to the contracting officer for a final decision. (Doc. 36 at 403). The Court stated that failure to do so would deprive the contracting officer with an opportunity to pass judgment on the Tribe's entire claim since the agency could find that the Tribe was entitled to monetary relief on its shortfall claim on an entirely different basis without ever considering whether third-party revenues should be included in the direct cost base and applied to the indirect cost rate for fiscal years 2011-13. (Doc. 36 at 403) (citing *Johnson Controls World Servs., Inc. v. United States*, 43 Fed.Cl. 589, 593 (1999) ("One way to ascertain whether the new set of claims involves a distinct set of facts is to ask whether the denial of one claim or type of claim would preclude recovery of the other.")).

In examining the Tribe's fiscal year 2011 claims letter, the Court found that it failed to detail the factual or legal basis for its third-party revenue-based claims. (Doc. 36 at 403). The Tribe merely indicated in its fiscal year 2011 form "expectancy and other damages" in the amount of $0. (Doc. 36 at 403). By contrast, in the Tribe's fiscal year 2012-13 Contract Dispute Calculation and Information Form, the Court found that the Tribe alleged at least the factual basis for its claims based on third-party revenues in the Tribe's Claim 7 for Expectancy damages.[1] (Doc. 36 at 403-04). However, the Court concluded after examining the relevant caselaw that the Tribe's

---

[1] In its Dispute Calculation and Information Forms for fiscal years 2012 and 2013, the Tribe's Claim 7 for Expectancy Damages is described as: (1) the amount of unpaid direct contract support costs and indirect costs paid from direct cost funding that should have been available for additional program services; and (2) the amount of third party revenues that would have been generated from the unpaid direct contract support costs and indirect costs paid from direct cost funding based upon the % of third party revenues compared to the direct cost award. (% multiplied by $ = amount of expectancy claim)." (Doc. 17-1).

claim of $0 or "$-"as detailed in its Claim 7 for expectancy damages did not meet the CDA's "sum certain" requirement.

The Tribe argued in opposition to the Motion to Dismiss that it was not precluded from seeking additional damages for its third-party revenue-based claims in federal court. (Doc. 24 at 262). The Court acknowledged that courts have "declined to impose so rigid of a standard as to preclude adjustments in claim amounts 'based on matters developed in litigation.'" (Doc. 36 at 409) (citing *K-Con Bldg. Sys., Inc.*, 778 F.3d at 1004). But in order for a court to exercise jurisdiction over a claim, the dollar amount of which has been enlarged in the court over the amount presented to the contracting officer, the Court noted that: (1) the increase in the amount of the claim must be based on the same set of operative facts previously presented to the contracting officer; and (2) the court must find that the contractor neither knew nor reasonably should have known, at the time when the claim was presented to the contracting officer, of the factors justifying an increase in the amount of the claim. (Doc. 36 at 409-10) (citing *Al-Juthoor Contracting Co. v. United States*, 129 Fed.Cl. 599, 619 (2016)). The Federal Court of Claims has held that "increases in the amount of a claim due to the mere passage of time" or based on information that was unavailable at the time the claimant filed the claim do not generally change a CDA claim into a new claim. (Doc. 36 at 410-11) (citing *Kellogg Brown & Root Servs., Inc. v. United States*, 115 F3d.Cl. 46, 54-55, n5 (2014); *Modeer v. United* States, 68 Fed.Cl. 131, 137 (2005); *Contract Cleaning Main., Inc. v. United States*, 811 F.2d 586, 591 (Fed. Cir. 1987)). For example, *Baha v. United States*, the court found that a claimant was not precluded from recovering damages for unpaid rent accruing for a consecutive three months after the claim was submitted. (Doc. 36 at 410) (citing *Baha v. United States*, 123 Fed.Cl.1, 6 (2015)). In *Baha*, at the time the claim was submitted, the claimant did not know how many months in the future the rent would go unpaid. *Id.* Similarly, *Contract Cleaning Maintenance*, the court found that a claimant was not precluded from pursuing an enlarged claim because the additional amount sought reflected the contractor's continued operation under the government's extension of the contract. (Doc. 36 at 411) (citing *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 591 (Fed. Cir. 1987)). The court in concluded that the increase was "reasonably based on further information." *Id.*

In its Memorandum Opinion and Order granting in part and denying in part the Government's Motion to Dismiss, the Court stated that the Tribe did not argue that its claim for

4

administrative costs paid on the third-party revenue-funded portion of its operations or its claim for lost third-party revenues was based on information gained in discovery or on information unknown to the Tribe at the time it submitted its claims to the contracting officer. (Doc. 36 at 410-11). In contrast to other cases finding jurisdiction over an enlarged claim, the Court did not see how this information had not been in the Tribe's possession at the time it filed its administrative claim. (Doc. 36 at 410).

The Tribe also argued in opposition to the Motion to Dismiss that it had satisfied the "sum certain" requirement because its claim for expectancy damages was "stated in a manner which allow[ed] for reasonable determination of the recovery available at the time the claim [was] presented." (Doc. 24 at 253). The Court acknowledged in its Opinion that "[a] monetary CDA claim may be saved from a failure to identify a sum certain if a simple mathematical calculation or the contractor's documentary submission to the contracting officer would determine the amount of the claim." (Doc. 36 at 411) (quoting *Tambolina Servs., Inc. v. United States*, Civ. No. 14-478, 2015 WL 4053490, at *3 (Jul. 2, 2015)). The Court stated, however, that the "simple mathematical calculation" approach will not save a contractor's claim if the contractor has not included a dollar figure in the claim submitted to the contracting officer. (Doc. 36 at 412) (citing *Exec. Court Reporters, Inc. v. United States*, 29 Fed.Cl. 769, 775 (1993); *Tambolina Servs., Inc.*, 2015 WL 4053490 at *4)). After examining the Tribe's September and November 2017 claims letters and the Tribe's fiscal year 2012 and 2013 Dispute Calculation and Information Forms, the Court found that the Tribe had not provided the contracting officer with any dollar figure for third-party revenues that the Tribe believed should be included in the direct cost base and applied to the indirect cost rate. (Doc. 36 at 412). Neither did the Court find that the Tribe provided to IHS any dollar figure for lost third-party revenues. (Doc. 36 at 412). Accordingly, the Court concluded that the Tribe's claims based on third-party revenues could not be easily determined from a simple mathematical calculation. (Doc. 36 at 412).

The Court noted that the Tribe had stated in its brief in opposition to Defendants' Motion to Dismiss that it had provided documentation to the contracting officer to support its claim for expectancy damages. (Doc. 36 at 412). Acknowledging that a claim may arise from a combination of more than one document submitted to the contracting officer, and to ensure that the Court was basing its jurisdictional analysis on a complete record, the Court ordered that the parties file, jointly

5

by stipulation if possible, "the additional documents the Tribe provided to [IHS] in support of its expectancy damages claims, prior to IHS's final decision denying the Tribe's claims." (Doc. 29). Over the Government's objection, the Court ruled that it was not precluded from considering documents that were exchanged during settlement negotiations to determine whether the Tribe fulfilled the CDA's presentation requirement. (Doc. 29).

Pursuant to the Court's Order, the Government filed an Unopposed Motion to File Settlement Correspondence Under Seal. (Doc. 31). The settlement correspondence indicated that on June 25, 2018, Jamie Whitelock, an attorney from the Office of General Counsel with the Department of Health and Human Services responded on behalf of IHS regarding the Tribe's fiscal year 2011-2013 claims. (Doc. 31-2 at 307). On October 19, 2018, counsel for the Tribe responded by letter labeled "Rule 408 Privileged Communication" in which it stated, among other things, that funding from third party revenues which were used to provide services under the funding agreements, amounted "to an increase in the direct cost base of $1,013,079, $635,269, and $874,248 for fiscal years 2011 through 2013, respectively." (Doc. 31-2 at 312-13). The Tribe stated in its settlement letter that this third-party funding added: (1) $841,226 in total to the Tribe's Claim 1 – Underpayment of NBC Awarded Rate (Shortfall Claim) ($319,323 in FY 11; $210,147 in FY 12; and $311,757 in FY 13); (2) $21,559 total to Claim 5 – Failure to Pay Direct Contract Support Costs ($8,658 in FY 11; $5,429 in FY 12; $7,472 in FY 13); (3) and $7,205 total to Claim 6 – Failure to Pay Indirect Costs on Unpaid Direct Contract Support Costs. (Doc. 31-2 at 313). The Tribe also noted that after further analysis, its Claim 1 for fiscal year 2012 was decreased by $27,287 to $278,407. (Doc. 31-2 at 313). The Tribe concluded its October 19, 2018, letter by offering to the settle its claims for a designated amount. (Doc. 31-2 at 313).

The Court held that the Tribe's settlement communications regarding lost third-party revenues and regarding administrative costs paid on the third-party revenue-funded portion of the Tribe's operations did not constitute a claim or an amendment to the Tribe's claims for several reasons. (Doc. 36 at 415). First, the Court found that the figures were not "submitted to the contracting officer" for a decision, but were provided to Ms. Whitelock, an intermediary employed by the Office of General Counsel with the Department of Health and Human Services who had been appointed by IHS to respond to the Tribe's claims in settlement negotiations. (Doc. 36 at 415). Although courts have found that the term "submitted" in the CDA can embrace the idea of

6

delivery through an intermediary, this Court found that the Tribe's submission did not constitute an amendment to the claim because the Tribe did not state that it was seeking an amendment of these claims, nor request that these amounts be forwarded to the contracting officer for final decision thereon, but simply referenced these additional sums to support its settlement proposal. (Doc. 36 at 415-16). The Court noted that in its December 26, 2018, response to the Tribe's October 19, 2018 letter detailing for the first time the Tribe's damages for its third party revenues-based claims, Ms. Whitelock stated that the Tribe's "new claims for third-party funding based on *Navajo Health Foundation—Sage Memorial Hosp., Inc. v. Burwell*, 263 F.Supp.3d 1083 (D.N.M. Nov. 3, 2015) [ ] have not been presented to IHS" and that as a result, the Agency could not consider these claims in the parties settlement negotiations. (Doc. 36 at 414) (citing Doc. 31-2 at 318, 320). The letter also indicated that claims for years prior to fiscal year 2012 were time-barred. (Doc. 36 at 414) (citing 31-2 at 320). Second, the Court found that the dollar figures contained in the October 19, 2018 settlement proposal by the Tribe did not meet the jurisdictional certification requirements for claims over $100,000. (Doc. 36 at 417). As the Court stated in its Opinion, the Federal Circuit has held that "the statutory mandate that all claims over [a specified amount] must be certified is one of the most significant provisions of the CDA." (Doc. 36 at 417) (citing *Fidelity Const. Co. v. United States*, 700 F.2d 1379, 1384 (Fed. Cir. 1983), *superceded by statute on other grounds*, *Ardestani v. I.N.S.*, 502 U.S. 129 (1991)). The purpose of certification is to facilitate settlements based upon a truthful submission of the contractor's costs. (Doc. 36 at 417) (citing *Medina Constr., Ltd. v. United States*, 43 Fed.Cl. 537, 547 (1999)). Certification discourages the submission of fraudulent or inflated claims by making contractors liable for fraudulent representation. (Doc. 36 at 417) (citing *J&E Salvage Co. v. United States*, 37 Fed.Cl. 256, 263 n6 (1997)). The Court noted that although a technically deficient certification does not necessarily preclude the Court's jurisdiction over a claim, a complete failure to provide a certification at all does preclude the Court's jurisdiction over a claim. (Doc. 36 at 417) (citing *Medina Constr., Ltd.*, 43 Fed.Cl. at 547).

The Court found that the Tribe's claim for unpaid contract support costs on the third-party revenue-funded portion of the Tribe's operations and the Tribe's claim for lost third-party revenues each exceeded $100,000 and were therefore subject to the certification requirements of the CDA. (Doc. 36 at 417). The Court stated that its review of the Tribe's settlement communications show that they did not contain even a technically deficient certification. (Doc. 36 at 418).

In sum, the Court concluded that it did not have jurisdiction over the Tribe's enlarged claims based on third-party revenues ($0 to $1,185,655) because it was not based upon factors or figures unknown to the Tribe at the time it filed its claim and because the Tribe's submission to counsel for IHS did not constitute a valid CDA claim or an amendment of its claims. To reiterate, the Court found that the new figures were not submitted to the contracting officer, but to an intermediary, not with a request that they be forwarded to the contracting officer for a final determination thereon, but in support of the Tribe's settlement proposal. Counsel for the contracting officer specifically indicated in her response that such claims had not been properly presented to the Agency and that as a result, she was not able to consider them in the parties' settlement negotiations. Finally, the Court found that the Tribe's settlement communications did not meet the certification requirements under the CDA. Accordingly, the Court concluded that it lacked jurisdiction over Counts II and III in the Tribe's complaint as well as the any statutory violation claims for lost third-party revenues and for unpaid contract support costs on the third-party revenue-funded portion of the Tribe's claims as alleged in Count VI.

## DISCUSSION

### II.     Motion for Reconsideration

Pending before the Court is the Tribe's Motion for Reconsideration under Rule 54(b) of the Federal Rules of Civil Procedure, or in the alternative, Motion to Amend under Federal Rule of Civil Procedure 15(a). (Doc. 40).

### A. Rule 54(b) Motion

In support of its Motion for Reconsideration, the Tribe states that prior to the contracting officer rendering a final decision on the Tribe's claims, it provided the contracting officer with documents containing dollar figures that would have allowed IHS to calculate the amount of damages the Tribe sought for its third-party revenues-based claims. (Doc. 41 at 439-41). The Tribe states that it overlooked the fact that these additional documents had been provided to IHS, and that it had inadvertently omitted these documents from the parties' September 23, 2021 stipulation. (Doc. 41 at 428). The Tribe argues that this omitted correspondence also demonstrates that never once did agency counsel indicate that documents provided by the Tribe were not reaching the contracting officer (or any other appropriate authority) and that IHS's "course of action" in reaching settlement through agency counsel in this litigation as well as during counsel's

8

past contract shortfall negotiations for the Tribe and for other tribes made it clear that the Tribe was dealing with agency counsel in these matters of dispute. (Doc. 41 at 429-30). The Tribe argues that because the Court did not have an opportunity to consider these documents in ruling on the Motion to Dismiss, the Court's conclusion that the Tribe's settlement communications claiming damages relating to third-party revenues did not constitute a valid CDA claim or amendment thereto, and the Court's conclusion that these communications did not meet the "sum certain" requirement of the CDA, were based on a manifest error of fact.

The Tribe has moved to vacate the Court's Memorandum Opinion and Order pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Defendant argues that the Tribe's motion should instead be considered as a motion for reconsideration of an interlocutory order under Rule 60(b). Rule 60(b) only applies to motions for relief from "a final judgment, order, or proceeding." *Interstate Power Co. v Kansas City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993) (finding that the district court erred by denying a Rule 60(b) motion to reconsider on the basis that the ruling in issue was not a "final judgment, order, or proceeding," and stating that the motion, made before all claims were decided, should have been considered under Rule 54(b)). No final judgment or order has been entered in this case. *See* Fed. R. Civ. P. 54(b) (providing for Rule 54(b) review for "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties"); *Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 856 (8th Cir. 2008) (stating that "an order dismissing fewer than all claims or parties is generally not a final judgment"). The Court may, however, reconsider a prior ruling that is interlocutory in nature under Federal Rules of Civil Procedure 54(b). *Jones v. Casey's Gen. Stores*, 551 F.Supp.2d 848, 854 (S.D. Iowa 2008) (citing *Interstate Power Co.*, 992 F.2d at 807).

Rule 54(b) of the Rules of Federal Procedure provides in pertinent part that:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). "The standard to be applied in considering a motion to reconsider under Rule 54(b) is not clear, but it is typically held to be less exacting than would be a motion under Federal Rule of Civil Procedure 59(e), which is in turn less exacting than the standards enunciated

in Federal Rule of Civil Procedure 60(b)." *Jones*, 551 F.Supp.2d at 854 (internal citations and quotations omitted). It is generally held that a court may amend or reconsider any ruling under Rule 54(b) to correct any "clearly" or "manifestly' erroneous findings of facts or conclusions of law. *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988). A motion to reconsider under Rule 54(b), however, may not "serve as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration was sought." *Id.* (citing *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.), *as amended*, 835 F.2d 710 (7th Cir. 1987)) (stating that Rule 54(b) motions cannot "be employed as a vehicle to introduce new evidence that could have been adduced during the pendency of the . . . motion")); *Julianello v. K-V-Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015) ("A motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not raised at the time the relevant motion was pending.").

In the Tribe's brief in support of its Motion to Reconsider and in its reply brief, the Tribe acknowledges that when the Court was ruling on the Motion to Dismiss, it inadvertently failed to provide the Court documents that the Tribe provided to IHS that would have permitted the contracting officer to calculate a "sum certain" for the Tribe's third-party revenue-based claims alleged in Counts II and III of the complaint. (*See* Docs. 41 at 434-36, 439-41; 52 at 1478). Additionally, the Tribe argues that it also failed to provide the Court with certain correspondence between the Tribe and counsel for IHS which demonstrate that never once did the agency counsel state that documents provided by the Tribe were not reaching the contracting officer (or any other appropriate authority) and that IHS's "course of action" in reaching settlement through agency counsel in this litigation, as well as during counsel's past contract shortfall negotiations for the Tribe and for other tribes, made it clear that the Tribe was dealing with agency counsel in these matters of dispute. (Doc. 41 at 429-30). The Tribe argues that the Court's order dismissing Counts II and III for failure to meet the presentation requirements under the CDA was based on a manifest error of fact because the Court had not been afforded an opportunity to consider this information in ruling on the Motion to Dismiss.

The Court is sympathetic to the fact that the parties had, unbeknownst to the Court, agreed to amend the record to include these documents and correspondence just prior to the Court filing its Memorandum Opinion and Order dismissing Counts II and III in their entirety and Count VI in

part. However, the Court concludes that it did not make a clearly or manifestly erroneous finding of fact based upon the stipulated documents that the parties had filed in response to the Court's order requesting that the parties file "additional documents the Tribe provided to [IHS] in support of its expectancy damages claims, prior to IHS's final decision denying the Tribe's claims . . . ." A motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending. *SPV-LS, LLC v. Transamerica Life Ins. Co.*, 912 F.3d 1106, 1111-12 (8th Cir. 2019). Nor may a motion for reconsideration serve to introduce evidence that the movant could have produced before the district court decided the prior motion. *Id.* Furthermore, as discussed more fully below, even if the Court had considered these additional documents to have been presented directly to the contracting officer, the Court concludes that they still do not constitute a valid CDA claim or an amendment thereto, nor do they meet the "sum certain" presentation requirement under the CDA.

### B. Motion to Amend

If the Court denies the Tribe's Rule 54(b) motion, then the Tribe moves, in the alternative, for leave to amend its complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to include the claims documents with the claims letters and calculation and information forms. (Doc. 41 at 441-42). The Tribe has filed a proposed amended complaint with the Court for its consideration. (Doc. 53-1). No scheduling order has yet been entered in this case as the Court had previously entered a stay to give the parties time to engage in settlement discussions which have thus far been unsuccessful.

In its proposed amended complaint, the Tribe newly alleges that:

> 47. On October 4, 2017 and November 20, 2017, the Contracting Officer acknowledged receipt and requested the Tribe provide additional documentation. (Ex. 4).

> 48. On November 16, 2017 and January 3, 2018 the Tribe provided the Contracting Officer with the documentation requested which it had in its file. (Ex. 5).

> 49. From June 25, 2018, through September 17, 2019, the Tribe and IHS discussed the claims, both in-person and through a series of correspondence. (Ex. 6).

(Doc. 53-1). Exhibits 2 and 3 were filed with the proposed amended complaint and the correspondence referenced in the proposed amended complaint was filed in conjunction with the Tribe's motion to amend.

A court should freely give leave to amend when justice so requires. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). However, there is no absolute right to amend. *Id.*. A court may appropriately deny leave to amend if there has been undue delay, bad faith, or dilatory motive by the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment. *Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005). An amendment is futile "if the proposed amended complaint does not establish a court's subject matter jurisdiction over the action" or fails to state a claim upon which relief may be granted. *See Walker v. Harmon*, Civ. No. 15-5037, 2016 WL 5376185, at *4 (D.S.D. Sept. 26, 2016) (citing *Am. Ins. Co. v. St. Jude Med., Inc.*, 597 F.Supp.2d 973, 979 (D. Minn. 2009) (citing *Longie v. Spirit Lake Tribe*, 400 F.3d 586, 588 n3 (8th Cir. 2005)); *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008). "[W]hen a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion, Fed. R. Civ. P. 12." *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007). Leave to amend is futile if the "proposed amended complaint does not cure the original complaint's deficiencies" with respect to subject matter jurisdiction. *Mortimer Offshore Servs., Ltd. v. Fed. Rep. of Germany*, 615 F.3d 97, 99 (2d Cir. 2010); *see, e.g., Home Builders Ass'n of Lexington, Inc. v. Lexington-Fayette Urb. Cty. Plan. Comm'n*, Civ. No. 5:19-00178, 2020 WL 2545323, at *1-2 (E.D. Ky. May 18, 2020) (evaluating the BIA's motion for leave to amend under Rule 12(b)(1) for lack of subject matter jurisdiction); *White v. Verzola*, Civ. No. 20-00295, 2020 WL 4192748, at *8 (E.D. Mo. Jul. 21, 2020) (denying plaintiff leave to amend because the proposed amendments do not establish subject matter jurisdiction).

Here, as discussed in detail below, granting the Tribe's motion to amend would be futile because its proposed amendments do not cure the absence of subject matter jurisdiction over Counts II and III and the claims in Count VI that were previously dismissed by the Court in its September 30, 2021 Opinion.

**1. Calculation of "sum certain" by a simple mathematical formula**

The Tribe argues that the contracting officer was properly placed on notice of the factual and legal basis of its expectancy damages claim in its claim letters and that at the request of IHS in its acknowledgment letters, the Tribe presented additional documents directly to the contracting officer and contract specialist showing the dollar figure for third-party revenues that the Tribe believes should be included in its direct cost base and applied to the indirect cost rate for fiscal years 2011-13. (Doc. 41 at 428, 439-40) (citing Doc. 47, Ex. 4 at 00166 (fiscal year 2011); Ex. 8 at 00364 (2012) and 00427 (2013)). These documents were inadvertently omitted by tribal counsel in the stipulated filing and were not available for the Court's consideration on the Motion to Dismiss. (Doc. 41 at 437-38). The Tribe states that these dollar figures were contained in the Tribe's "annual audit reports," which is among the list of additional documentation the contracting officer specifically requested. (Doc. at 440) (citing Doc. 47, Ex. 1 at 00003; Ex. 5 at 00192). The documents that the Tribe alleges were submitted directly to the contracting officer have been filed in support of the Tribe's motion to amend. (Doc. 47). The Tribe argues that the figures contained in these documents would permit the contracting officer to identify a sum certain for its third-party revenues-based claims by a simple mathematical calculation. (*See* Doc. 52 at 1485).

The Court acknowledged in its Memorandum Opinion and Order that "[a] monetary CDA claim may be saved from a failure to identify a sum certain if a simple mathematical calculation or the contractor's documentary submission to the contracting officer would [permit the contracting officer to] determine the amount of the claim." (Doc. 36 at 411). For example, a court has held that a claims letter stating the specific amount of rent, the number of days each amount allegedly was late, and claiming interest on the late payments as provided for by the Prompt Payment Act, satisfies the "sum certain" requirement of the CDA because it allows the contracting officer to simply calculate the rent and interest due under the statutory rate. *See GFPA-I, LP v. United States*, 46 Fed.Cl.762, 767 (2000); *see also Hamza v. United States*, 31 Fed.Cl. 315, 322 (1994) ("In plaintiff's letters dated March 11 and April 7, he requested rent for the "final seventy (70) days of his lease" and "until December 10, 1991. . . [D]efendant was able to calculate the amount requested and conclude that the amount of the claim was $335,616.").

However, the "simple mathematical calculation approach" will not save a contractor's claim if the documents do not provide the mathematical formula and fail to provide the contracting officer with dollar figures to compute the amount requested. (Doc. 36 at 412) (citing *Exec. Court*

13

*Reporters, Inc. v. United States*, 29 Fed.Cl. 769, 775 (1993)). In examining the correspondence and documents that the Tribe alleges were provided to the contracting officer and that are referenced in the Tribe's proposed amended complaint, the Court concludes that they fail to establish the Court's subject matter jurisdiction over the Tribe's third-party revenues-based claims. The Tribes fiscal year 2011 claims letter fails to provide a formula for "expectancy and other damages," or even allege a factual or legal basis for such claim.[2] In Claim 7 of the Tribe's fiscal year 2012-13 Dispute Calculation and Information Forms, the Tribe claims expectancy damages for: (1) "Amount of unpaid direct contract support costs and indirect cost paid from direct cost funding that should have been available for additional program services" in the amount of "$-" and for (2) "Amount of third party revenues that would have been generated from the unpaid direct contract support costs and indirect costs paid from direct cost funding based upon the % third party revenues compared to the direct cost award" which it provides may be calculated by using the formula "% multiplied by $ = amount of expectancy claim" in the amount of "$-."

Even if the contracting officer was able to calculate expectancy damages for fiscal years 2012 and 2013 using this formula, the Court concludes that it would not have been able to simply deduce a "sum certain" from the voluminous documents and figures provided by the Tribe. *See Metric Contr. Co. v. United* States, 14 Cl.Ct. 177, 179-80 (1988) (holding that the contractor's demand failed to state a sum certain because such an amount could not be easily derived from the volumes of documents and confusing exhibits appended to the demand letter); *N. Start Alaska Hous. Corp. v. United States*, 76 Fed.Cl. 158, 185 (2007) (stating that administrative claims cannot "be cobbled together from various documents" and that a plaintiff must provide a "select group of documents" that "provide a clear and unequivocal indication as to the amount sought by plaintiff."). The Tribe states that the "other income from health insurance" line item on page 157 of the 180 pages of documents that the Tribe submitted to IHS on November 16, 2017, was sufficient to place the contracting officer on notice of the damages it was seeking for its fiscal year 2011 expectancy damages claims (Docs. 41 at 435; 47-4). Similarly, the Tribe argues that the "other income from health insurance" line item on pages 165 and 166 of the 282 pages of documents that the Tribe submitted to IHS on January 3, 2018, was sufficient to place the contracting officer on notice of the damages it was seeking for its fiscal year 2012 and 2013

---

[2]     The Tribe's FY 2011 Claim's letter simply details for "Expectancy and Other Damages" in the amount of $0. (Doc. 1-3).

expectancy damages claims. (Docs. 41 at 436; 47-8). The Tribe never alerted the contracting officer to these figures or the fact that they could be used to calculate a sum certain for the Tribe's expectancy damages claim. A contracting officer is not required to sift through hundreds of pages of documents to locate the figures that the Tribe now asserts may then be used to calculate their expectancy damages claim. Even if IHS was somehow to deduce from all of the raw information submitted by the Tribe that the "other income from health insurance" line items represent the third-party revenue amounts that the Tribe failed to detail in its claim letters, it is important to note that these line items do not match the third-party revenue amounts that the Tribe stated (for the first time to counsel for IHS in its October 19, 2018 settlement proposal) should be added to the direct cost base against which the Tribe's indirect cost rate was applied.[3] This is a further reason that Court finds it difficult to adopt the Tribe's argument that its claims based on third-party revenues could be determined based on the dollar figures and formula provided by the Tribe.

As referenced by the Court in its Opinion ruling on the Government's Motion to Dismiss, the policy rational underlying the "sum certain" requirement is to prevent contractors from seeking appellate relief on claims settled by the contracting officer. (Doc. 36 at 409) (citing *N. Star Alas. Hous. Corp. v. United States*, 76 Fed.Cl. 158, 184 (2007)); *see also Exec. Ct. Reps., Inc. v. United States*, 29 Fed.Cl. 769, 775 (1993) (citing *Metric Constr. Co. v. United States*, 14 Cl.Ct. 177, 179 (1988)).

> Whenever a contracting officer fully settles a claim, the contractor cannot take an appeal, according to the doctrine of accord and satisfaction. If the contracting officer settles only a portion of the claim, the contractor may appeal, arguing entitlement to the difference between the original amount requested and the amount settled by the contracting officer. A problem, however, arises when the contractor fails to specify a sum certain. In this instance, the contracting officer cannot finally settle a case by simply awarding a specific amount of money, because such a settlement would not preclude the contractor from filing suit seeking the difference between the amount awarded and some larger amount never specifically articulated to the contracting officer.

---

[3] In its October 19, 2018, letter to counsel for IHS, the Tribe indicated for the first time that funding from third-party revenues amount to an increase in the direct cost base of $1,013,079, $635,269, and $874,248 for fiscal years 2011 through 2013, respectively. (Doc. 30-2). The "other income from health insurance" line items detailed in the Tribe's documentary submissions to counsel for IHS on November 16, 2017, and January 3, 2018, (which the Tribe states in its brief represent "actual expenditures for direct costs associated with operation of the ISDEAA programs for each year at issue") total $975,687, $684,213, and $852,522, for fiscal years 2011 through 2013, respectively. (Doc. 47-4; 47-8).

*Exec. Ct. Reps., Inc.*, 29 Fed. Cl. at 775 (citing *Metric Constr.*, 14 Cl.Ct. at 179). Even if the Court was to consider the allegations in the proposed amended complaint and communications and documents referenced therein to have been submitted directly to the contracting officer, the Court concludes that overall, they fail to provide a "clear and unequivocal" indication of the amount sought by the Tribe for these claims.

### 2. Agency change of course – arbitrary and capricious

In support of the Tribe's motion to amend, counsel for the Tribe averred that he had negotiated settlements in at least eight separate contract support cost shortfall claims, both for Flandreau Santee Sioux Tribe (for its fiscal years 2006-2010) claims and for other tribes. (Doc. 43, ¶ 17). Counsel further averred that communications with agency counsel were held out by IHS and understood by the Tribe to be part of a continuous negotiations starting with presentment of the claim and ending (generally) in mutual resolution of the same. (Doc. 43, ¶ 18).

The issue in this case, however, as the Court held in its September 30, 2021 Opinion ruling on the Motion to Dismiss was that there was no proper presentation of the Tribe's third-party revenues-based claims. Even if the Court were to accept the fact agency counsel was authorized by IHS to accept new or amended claims, the settlement communications do not establish that the Tribe ever presented a valid CDA claim based on third-party revenues to either counsel or to IHS. In its October 19, 2018 letter, the Tribe indicated for the first time in its settlement proposal that it was claiming expectancy damages under *Navajo Health Found.-Sage Mem'l Hosp., Inc. v. Burwell*, 263 F.Supp.3d 1083, 1164 (D.N.M. 2016).[4] As discussed by the Court in its September

---

[4]     Prior to this, when asked by IHS to provide further explanation for the methodology used to calculate its shortfall claim, the Tribe never made any reference to *Sage* or to the fact that it believed third-party revenues should be included in its direct cost base and applied to the indirect cost rate for fiscal years 2011 through 2013. (Doc. 47-3; 47-7). Instead, it appears that the Tribe took issue with the indirect cost rate used by IHS. (*See* Doc. 47-7 ("IHS appears to be choosing the IDC methodology which it believes best suits is purposes. Under the contracts as written, however, the appropriate method to recoup any funds IHS claims were paid that were not incurred is to adjust the rate on a two-year lookback, after the audits are in and accepted, accounting for all applicable capital expenditures and pass-through funds. Under federal law, that approved rate must be adhered to. IHS may not now amend a pre-established process unilaterally to avoid its contractual obligations."); Doc. 47-3 ("Initially, the appropriate method to recoup any funds IHS believes were paid that were not incurred is to work from the Tribe's final rate under the standard terms and conditions used by DOI when a provisional rate is converted to a final rate under the OMB circulars. IHS may not now change the terms of the agreement to its own benefit to essentially penalize the Tribe twice for any alleged overpayment: once on reconciliation to a final rate and again in these negotiations.").

30, 2021 Opinion, under the CDA, claims that are made by a contractor for more than $100,000, the contractor is required to certify that—

> (A) the claim is made in good faith;
> (B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief;
> (C) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and
> (D) the certifier is authorized to certify the claim on behalf of the contractor.

(Doc. 36 at 406) (citing 41 U.S.C. § 7103(b)).   Certification of claims of $100,000 is a jurisdictional prerequisite to suing in federal court under the CDA.  (Doc. 36 at 417) (citing *CSX Trans., Inc. v. United States*, 123 Fed.Cl. 244, 250 (2015)).  As stated by the Court in its Opinion:

> The Federal Circuit has held that "the statutory mandate that all claims over [a specified amount] must be certified is one of the most significant provisions of the CDA." The purpose of certification is to facilitate settlements based upon a truthful submission of the contractor's costs. Certification discourages the submission of fraudulent or inflated claims by making contractors liable for fraudulent representation.

(Doc. 36 at 417) (internal citations and quotations omitted).  The Tribe's claim for unpaid contract support costs on the third-party revenue-funded portion of the Tribe's operations and the Tribe's claim for lost third-party revenues in fiscal years 2011 through 2013, each exceed $100,000 and are therefore subject to the certification requirements of the CDA.  The Court found in its Opinion, that the Tribe's October 18, 2018 settlement proposal failed to contain even a technically defective certification. (Doc. 36 at 418).  Because the Tribe did not meet the certification requirements for these claims, the Court lacks subject matter jurisdiction over them.

The Tribe argues that under *AAI Corp. v. United States,* 22 Cl.Ct. 541, 544 (1991), the Tribe provided adequate notice of its expectancy damages claim and the Court has jurisdiction over the enlarged amount of damages its seeks for this claim.[5]  In that case, the plaintiff, AAI Corporation ("AAI") contracted with the United States to develop and fabricate a timer to be used on non-nuclear bombs by the Air Force. *Id.* at 541-42.  One of contract modifications by the

---

[5]      In its claims letters for expectancy damages and fiscal year 2012 and 2013 Dispute Calculation and Information Forms, the Tribe indicated damages in the amount of "$0" or "$-" for its expectancy damages claim. In its September 30, 2021, Opinion, Court cited to numerous cases which have held that a claim for $0 does not constitute a valid CDA claim.

parties included a Federal Acquisition Regulation ("FAR") clause entitled "Value Engineering" which provided that "[t]he Contractor is encouraged to develop, prepare and submit value engineering change proposals ("VECP'S") voluntarily and that the contractor shall share in any net acquisition savings realized from accepted VECP's. . ." *Id.* at 542.

AAI claimed that in accordance with the Value Engineering Clause, it undertook a redesign effort to reduce the cost of fabricating the timer to be produced under the contract, separate and apart from the work required under the contract. *Id.* During a design review with the government, AAI submitted what it contended was a preliminary VECP. *Id.* AAI alleged that the design presented by it at the design review incorporated all changes required by the contract's statement of work and all VECP changes. *Id.* The Government authorized AAI to proceed with fabrication of the preproduction sample in accordance with the design presented at the design review. *Id.* Two weeks later, the Government disapproved of the preliminary VECP, indicating that there was no VECP because all the changes were part of the existing contract. *Id.* at 542-43.

AAI submitted a claim to the Air Force contracting officer asserting that (1) the VECP complies with the FAR definition of VECP; (2) the design changes included in the VECP were not developed as a result of contractual requirements; and (3) AAI is entitled to share in the savings resulting from the VECP. *Id.* In response to the Air Force's request as to the amount of the claim, AAI responded that "there were no instant contract savings or negative instant contract savings anticipated on the instant contract" because plaintiff anticipated that implementation costs would be offset by instant contract savings, leaving no instant contract savings or negative instant contract savings.[6] *Id.* at 543. AAI repeated its claim to a portion of savings related to hypothetical future contracts. *Id.*

The Air Force contracting officer denied the VECP claim on the ground that the design changes resulted from work required for the original contract and that there was no VECP as defined by FAR. *Id.* AAI filed its complaint in federal court appealing the decision of the contracting officer and seeking its share of acquisition savings. *Id.* In its original complaint, AAI alleged that "[p]laintiff anticipates that the allowable implementation costs associated with the VECP will offset the cost savings on the 1,275 unites to be delivered under the instant contract.

---

[6]    "Net acquisition savings" under the Value Engineering Clause includes instant contract savings, concurrent contract savings, and future contract saving. *AAI Corp.*, 22 Cl.Ct. at 542.

Therefore, no instant contract savings are claimed under the VECP." *Id.* After AAI filed its original complaint, it identified additional implementation costs that it incurred as a result of development and implementation of the VECP. *Id.* These implementation costs exceeded instant contract savings by $504,875.75. *Id.* AAI filed its first amended complaint to include these implementation costs and the resulting negative instant contract savings of $504,875.75 and to include $264,362.62 as its share of contract savings. *Id.* at 543-44. The government moved to dismiss this claim for lack of subject matter jurisdiction on the basis that AAI never submitted the amended claim to the contracting officer. *Id.* at 544.

As this Court acknowledged its September 30, 2021 Opinion, and as the Federal Court of Claims acknowledged in *AAI Corp.*, a court may exercise jurisdiction over a claim, the dollar amount of which has been enlarged in the court over the amount presented to the contracting officer if:

(1) The increase in the amount of the claim is based on the same set of operative facts previously presented to the contracting officer; and
(2) The court finds that the contractor neither knew nor reasonably should have known, at the time when the claim was presented to the contracting officer, of the factors justifying an increase in the amount of the claim.

(Doc. 36 at 409-10); *AAI Corp.*, 22 Cl.Ct. at 544.

Ultimately, the court in *AAI Corp.* concluded that it had jurisdiction over AAI's claim because it was based on the same set of operative facts presented to the contracting officer and was based on additional information available after the contracting officer's decision. *Id.* at 545. The court found that AAI had "consistently alerted" the contracting officer to the possibility that implementation costs would exceed instant contract savings, leaving negative instant contract savings, and that AAI was claiming savings on the 14,000 units. *Id.* at 544. The Court noted that the plaintiff anticipated the implementation costs would be offset by instant contract savings, leaving no instant contract saving or negative instant contract savings, but that it had identified additional implementation costs that it incurred as a result of development and implementation of the VECP. *Id.* at 543. This "[a]dditional information, available after the contracting officer's decision, required a recalculation of AAI's claims share of net acquisition savings. *Id.* at 545.

The Court finds that the facts of this case are distinguishable from those in *AAI Corp.* The Court does not find, as argued by the Tribe (Doc. 40 at 436), that its third-party revenue claims

formed the basis of its damages claims throughout its negotiation with IHS. In its claims letter and Dispute Calculation and Information Forms, the Tribe indicated that its expectancy damages claims were "$0." As a result, IHS never acknowledged that Tribe's "claim" for expectancy damages, nor did it acknowledge any other "claim" for which the Tribe indicated a "sum certain" damages amount in the amount of "$0" or "$-."[7] (Docs. 47-1; 47-5; 30-1). From the time it submitted its claims letters on September 27, 2017, and November 6, 2017, the Tribe engaged in settlement discussions and communications with counsel for IHS. During this time, IHS never once acknowledged any claim by the Tribe for expectancy damages, and unlike in *AAI Corp.*, the Tribe never alerted the contracting officer that it suffered any damages from such a claim until its October 19, 2018 settlement proposal to counsel for IHS.[8]

The Tribe has never argued that dollar figures supporting its third-party revenues-based claims was not available to it at the time it filed its administrative claim. The Court stated in its Opinion that it is hard to fathom that information relating to third-party revenues was not always in the Tribe's possession. (Doc. 36 at 410). It is clear from the documents provided by the Tribe in support of its Motion for Reconsideration and to Amend that this information was in the Tribe's possession.

Counsel for the Tribe has averred that he had negotiated settlements in at least eight separate contract support cost shortfall claims, both for Flandreau Santee Sioux Tribe (for its fiscal years 2006-2010) claims and for other tribes. (Doc. 43, ¶ 17). Counsel stated that in all those negotiations, agency counsel never claimed that it was not authorized to act on the agency's behalf in relation to those claims or that it was not sharing documents and analysis exchanged during settlement negotiations with any relevant decision maker. (Doc. 43, ¶ 18). Within this framework,

---

[7]      It is important to note that the 450+ pages of information that the Tribe submitted to IHS in November 16, 2017, and in January 3, 2018, were in response to IHS's request for further information to support the claims it acknowledged in its acknowledgment letters. As stated above, IHS never acknowledged a claim by the Tribe for expectancy damages in its acknowledgment letters because the Tribe had indicated a damages amount of $0. As a result, the Court does not find persuasive the Tribe's argument that the volume of documents submitted to IHS placed IHS on notice that it was pursuing a claim for expectancy damages of a "sum certain" amount.

[8]      As noted in footnote 4 of this Opinion, when asked by IHS to provide further explanation for the methodology used to calculate its shortfall claim, the Tribe never made any reference to *Sage* or to the fact that it believed third-party revenues should be included in its direct cost base and applied to the indirect cost rate for fiscal years 2011 through 2013. Instead, it appears that the Tribe took issue with the indirect cost rate used by IHS. It was not until the Tribe's October 19, 2018, settlement proposal to counsel for IHS that the Tribe indicated that it was claiming damages under *Sage*.

counsel has stated that the Tribe understood the law on presentment of a claim under the CDA to be that the amount of the claim, if not the basis on which it is predicated, may change, and that IHS "authorized" agency counsel to represent the agency under the CDA during tribal contract support cost shortfall settlement negotiations. (Doc. 41 at 430).

The Tribe contends that it was not aware that IHS was treating its third-party revenue claims as not meeting the presentation requirements of the CDA until the Agency filed a separate response on September 24, 2021, just prior to the Court issuing its Opinion ruling on the Motion to Dismiss. (*See* Doc. 41 at 432) (characterizing IHS's action in its response as a "change of course"). However, counsel for the Agency made clear in its December 2018 response to the Tribe's claim for additional damages based on third-party revenues that it did not consider such claims to have been properly presented to IHS and was therefore not permitted to consider them during the parties' settlement negotiations. (Doc. 30-3 at 358-60).

Whether or not IHS has construed the CDA presentation requirements differently in this case than it has in previous claims brought by the Tribe and other tribes and whether, as argued by counsel for the Tribe, its actions are arbitrary and capricious, the Court cannot say. What the Court can say is that under its interpretation of the relevant caselaw, statutes, and considering all of the information and communications between IHS and the Tribe that was referenced in the Tribe's proposed amended complaint, the Tribe has not met the presentation requirements under the CDA for its third-party revenue-based claims. The Tribe's Motion to Amend is therefore denied on the basis of futility.

Accordingly, it is hereby ORDERED that the Tribe's Motion for Reconsideration or in the Alternative, Motion to Amend (Doc. 40) is DENIED.

Dated this _____ day of July, 2022.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK